UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIE JAMES MOORE, JR.,

                        Plaintiff,

v.                                                      7:15-CV-0100
                                                        (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

CONBOY, MCKAY, BACHMAN,                                 LAWRENCE HASSELER, ESQ.
& KENDALL, LLP
  Counsel for Plaintiff
407 Sherman St.
Watertown, NY 13601

U.S. SOCIAL SECURITY ADMIN.                             REBECCA H. ESTELLE, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

    This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 19.)  This case has proceeded in accordance with General

Order 18.

    Currently before the Court, in this Social Security action filed by Willie James

Moore, Jr. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 16, 18.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on November 29, 1979.  (T. 210.)  He completed high school. (T. 221.)  Generally, Plaintiff's alleged disability consists of knee and back impairments and a mental condition.  (T. 238.)  He previously worked as a truck driver for the Army. (T. 32.)

### B.    Procedural History

In a decision dated December 4, 2007, Plaintiff was found disabled as of August 4, 2007.  (T. 82-83.)  On March 21, 2012, the Commissioner determined that Plaintiff was no longer disabled as of February 14, 2012.  (T. 84-85.)  The determination was upheld upon reconsideration on October 17, 2012 after a disability hearing by a State agency Disability Hearing Officer.  (T. 92.)  Thereafter, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  On April 5, 2013, Plaintiff appeared before the ALJ, Robert E. Gale.  (T. 33-76.)  On June 14, 2013, ALJ Gale issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 10-32.)  On December 9, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following eight findings of fact and conclusions of law.  (T. 14-26.)  First, the ALJ found that the most recent favorable medical decision finding that Plaintiff was disabled was the decision dated November 28, 2007 ("comparison point decision" or "CPD").  (T. 15.)[1]  Second, the ALJ found that through February 14, 2012, Plaintiff did not engage in substantial gainful activity.  (*Id.*)  Third, the ALJ found that Plaintiff developed the additional impairments of depression, anxiety, and a knee impairment after the CPD.  (T. 15-16.)  Fourth, the ALJ determined that since February 14, 2012, Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 17.)  Fifth, the ALJ found that medical improvement occurred as of February 14, 2012.  (T. 18.)  Sixth, the ALJ determined that as of February 14, 2012, Plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work.  (*Id.*)[2]  The ALJ determined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight hour workday, and stand and/or walk for thirty minutes at a time for a total of four hours in an eight-hour day.  (*Id.*)  The ALJ further determined that Plaintiff could occasionally climb stairs or ramps, but should only rarely kneel or crawl, and should not climb ladders, ropes, or scaffolds.  (*Id.*)  Regarding mental limitations, the ALJ determined Plaintiff could understand and remember simple instructions, perform simple tasks independently and with supervision, make appropriate decisions, attend to a routine,

---

[1]  The CPD determined that Plaintiff suffered from the severe impairments of adjustment disorder with mixed anxiety and depressed mood, and traumatic brain injury.  (T. 15.)

[2]  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567(a).

and maintain a schedule.  (*Id.*)  Seventh, the ALJ determined Plaintiff's medical improvement was related to the ability to work because it resulted in an increase in Plaintiff's RFC.  (T. 24.)  Eighth, the ALJ determined that as of February 14, 2012, Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 24-26.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes five separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to properly consider all of Plaintiff's severe impairments.  (Dkt. No. 16 at 14-16 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ substituted his own judgment for competent medical opinion.  (*Id.* at 16-18.)  Third, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's credibility.  (*Id.* at 18-20.)  Fourth, Plaintiff argues the ALJ failed to follow the treating physician rule. (*Id.* at 20-22.)  Fifth, and lastly, Plaintiff argues the ALJ failed to properly assess Plaintiff's RFC.  (*Id.* at 22-25.)

### B.    Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the ALJ's severity determination was proper.  (Dkt. No. 18 at 11-12 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues the ALJ's RFC determination was supported by substantial evidence.  (*Id.* at 12-15.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard for Continuing Disability**

An individual's continued entitlement to disability benefits under the Social Security Act is conditioned on periodic review. 42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1590, 404.1589. The Commissioner may terminate disbursement of benefits upon finding that an individual's impairment is no longer disabling. 42 U.S.C. § 423(f). The Commissioner has established an eight-step evaluation process to determine whether an individual continues to be disabled as defined by the Social Security Act. 20 C.F.R. § 404.1594.

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If so, and any applicable trial work period has been completed, the claimant is no longer disabled. If not, the Commissioner's review proceeds.

At step two, the Commissioner determines whether the claimant's impairment, or combination of impairments, meets or equals the severity of an impairment listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1594(f)(2). If so, the claimant's disability continues. If not, the Commissioner's review proceeds.

At step three, the Commissioner must determine whether there has been medical improvement. 20 C.F.R. § 404.1594(f)(3). Medical improvement is any decrease in medical severity of the claimant's impairment(s) as established by improvement in symptoms, signs and/or laboratory findings. 20 C.F.R. § 404.1594(b)(1). If medical improvement has occurred, the Commissioner's review proceeds to step four. If not, the Commissioner's review proceeds to step five.

At step four, the Commissioner must determine whether medical improvement is related to the ability to work. 20 C.F.R. § 404.1594(f)(4). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities. 20 C.F.R. § 404.1594(b)(3). If medical improvement is unrelated to the claimant's ability to work, the Commissioner proceeds to step five. If medical improvement is related to the claimant's ability to work, the Commissioner's review proceeds to step six.

At step five, the Commissioner must determine whether an exception to medical improvement applies. 20 C.F.R. § 404.1594(f)(5). There are two groups of medical exceptions set forth in 20 C.F.R. § 404.1594(d) and (e). If an exception from the first group applies, the analysis proceeds to step six. If an exception from the second group applies, the claimant's disability has ended. If no exception applies, the claimant's disability continues.

At step six, the Commissioner must determine whether all of the claimant's current impairments in combination are severe. 20 C.F.R. § 404.1594(f)(6). If all current impairments in combination do not significantly limit the claimant's ability to perform basic work activities, the claimant is no longer disabled. If all current

impairments in combination significantly limit the claimant's ability to perform basic work activities, the analysis proceeds to step seven.

At step seven, the Commissioner must assess the claimant's RFC based upon all current impairments and determine whether the claimant is able to perform past relevant work. 20 C.F.R. § 404.1594(f)(7). If capable of performing past work, the claimant is no longer disabled. If not, the analysis proceeds to step eight.

At step eight, the Commissioner must determine whether there is other existing work that the claimant can perform given the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1594(f)(8). If capable of performing other work, the claimant is no longer disabled. If incapable of performing other work, the claimant's disability is found to continue.

Review of the claimant's disability may cease and benefits continued at any point if the Commissioner finds sufficient evidence that the claimant remains unable to engage in substantial gainful activity. 20 C.F.R. § 404.1594(f).

## IV. ANALYSIS

### A. Plaintiff's Non-Severe Impairments

Under the Regulations an impairment will be found "not severe" if the medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on Plaintiff's ability to perform basic work-related activities, such as walking, standing, or sitting. 20 C.F.R. § 404.1521. Plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. § 404.1512(a).

The Second Circuit has held that the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

In addition, where the ALJ has determined that an impairment is non-severe, "other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). It has been well established that "a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

Here, the ALJ determined that Plaintiff developed additional impairments after the CPD which were severe.  (T. 15.)  However, the ALJ also determined that Plaintiff's podiatric conditions, hypertension, neck and back pain, and migraines were non-severe impairments.  (T. 16.)

Plaintiff argues the ALJ erred in his determination that Plaintiff's migraines, low back pain, and podiatric conditions were non-severe.  (Dkt. No. 16 at 14-16 [Pl.'s Mem. of Law].)  Substantial evidence supported the ALJ's determination that these impairments were non-severe; further, any error would be harmless because the ALJ took into consideration all of Plaintiff's impairments in making his RFC determination.

Although Plaintiff was diagnosed with migraines in December of 2007 (T. 323), a diagnosis alone does not render an impairment severe. *Coleman,* 895 F.Supp. at 53. Plaintiff's treatment records indicated he sought treatment for migraines in January of 2012 and in October of 2012.  (T. 421, 496.)  However, the majority of treatment notations only list migraines in Plaintiff's medical history.  (T. 400, 403, 406, 456, 469, 473, 519, 523.)  The ALJ concluded that Plaintiff failed to meet his burden in establishing that his migraines cause more than minimal work-related limitations.  (T. 17.)  Substantial evidence supported the ALJ's determination.  Although a review of the record indicates Plaintiff was diagnosed with migraines and sought treatment for migraines in 2012, the record ultimately failed to establish that Plaintiff's migraines caused work related functional limitations.

The ALJ also properly concluded that Plaintiff's neck and back pain were non-severe impairments because there was no objective medical evidence establishing

Plaintiff's alleged nerve damage and Plaintiff did not seek treatment for back pain during the relevant time period.  (T. 16.)

The ALJ properly determined Plaintiff's foot impairments were non-severe.  (T. 16.)  The ALJ reasoned that the record failed to indicate that Plaintiff's foot impairments caused him more than minimal work-related limitations.  (*Id.*)  Further, any error in finding Plaintiff's foot impairments non-severe was harmless, because Plaintiff testified that his foot condition makes it difficult for him to stand (T. 49-50) and the ALJ ultimately concluded Plaintiff was capable of sedentary work (T. 18).  Plaintiff also testified that treatment provided "about two months" of relief before he experienced symptoms again. (T. 50.)  *See Zabala v. Astrue,* 595 F.3d 402, 410 (2d Cir.2010) (finding harmless error where the ALJ's consideration of a doctor's report would not have changed the ALJ's adverse determination).  Finally, any error would be harmless because the ALJ considered all of Plaintiff's impairment in making his RFC determination.  (T. 18-24.) Therefore, the ALJ did not err in his determination that Plaintiff's migraines, low back pain and foot impairments were non-severe and it is recommended that his determination regarding severity be upheld.

## B.     The ALJ's RFC Determination

A plaintiff's RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (citing SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)).  In making an RFC determination, the ALJ will base his determination on "all the relevant evidence" in a plaintiff's case record.  20 C.F.R. § 404.1545(a).

The relevant factors considered in determining what weight to afford a medical opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. § 404.1527(c)(1)-(6).

It is well established that a treating physician's opinion as to the nature and severity of an impairment is given controlling weight. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam). But a treating physician's opinion is not entitled to controlling weight when it is not supported by medically acceptable, clinical, and laboratory diagnostic techniques or is inconsistent with other evidence in the record. *Greek,* 802 F.3d at 375.

The following factors must be considered by the ALJ when deciding how much weight the treating source's opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

**i.)    Mental RFC**

The ALJ determined that Plaintiff had the mental RFC to understand and remember simple instructions, perform simple tasks independently and with supervision,

make appropriate decisions, attend to a routine, and maintain a schedule. (T. 18.) The ALJ based his mental RFC determination on the medical source statements provided by: Plaintiff's provider, Cheryl Morrier, Ph.D.; consultative examiner, Christina Caldwell, Pys.D.; Plaintiff's provider, Michael Thompson[3]; and, the State agency medical psychological consultant, C. Butensky, Psy.

Plaintiff argues the ALJ erred in his mental RFC determination because he (1) substituted his own opinion for that of competent medical opinion and (2) he failed to follow the treating physician rule. (Dkt. No. 16 at 16-18, 20-22, 24.) For the reasons stated herein, and further outlined in Defendant's brief, the ALJ did not err in his mental RFC determination.

The record regarding Plaintiff's mental health treatment is scarce. The record includes a medical source statement from Dr. Morrier, a medical source statement from Dr. Caldwell, notations from Mr. Thompson, and a Psychiatric Review Technique form completed by Dr. Butensky.

On June 29, 2012, Plaintiff met with consultative examiner, Dr. Caldwell. (T. 531.) Dr. Caldwell conducted a mental examination and provided a medical source statement. During her mental examination, Dr. Caldwell noted Plaintiff was cooperative, his manner of relating, social skills, and overall presentation were adequate. (T. 532.) Dr. Caldwell observed that Plaintiff dressed appropriately, was well groomed, and made eye contact. (*Id.*) She noted his speech was fluent, quality of his voice was clear, and

---

[3]    Mr. Thompson met with Plaintiff and reviewed Plaintiff's medical records on behalf of the VA for "compensation and pension purposes" on April 28, 2010, during which Plaintiff was still considered disabled. (T. 480-483.) It appears that his notations were then approved by Dr. William Marx. (*Id.*) Mr. Thompson stated that based on Plaintiff's depression his occupational functioning was "moderately to severely impaired." (T. 483.) Mr. Thompson further opined that Plaintiff was impaired in his ability to maintain appropriate focus and attention, he would have trouble carrying out work-related activities. (*Id.*) He might have problems in maintaining appropriate behavioral and emotional stability. (*Id.*)

his expressive and receptive language was adequate. (*Id.*) Dr. Caldwell noted Plaintiff's thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia. (*Id.*) She observed Plaintiff appeared agitated and irritable. (*Id.*) Plaintiff was oriented, his attention and concentration were intact, his recent and remote memory was intact, his cognitive functioning was average, his insight was fair to poor, and his judgment was fair. (T. 533.)

In a medical source statement, Dr. Caldwell opined that Plaintiff was able to:

> follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform complex tasks independently. He has limited ability to make appropriate decision, relate adequately with others, and appropriately deal with stress. These difficulties are caused by [alcohol abuse, in remission; depressive disorder; anxiety disorder] and physical limitations.

(T. 534.)

Dr. Morrier met with Plaintiff on November 4, 2012 and April 18, 2013. (T. 585.) In November of 2012, Dr. Morrier met with Plaintiff for an initial intake. (T. 583.) Plaintiff reported that he lived with his girlfriend and children and had a good relationship with his family and father. (*Id.*) Plaintiff reported he experienced guilt, depression and anger when he was determined to be non-deployable. (*Id.*) He stated he experienced depression "on and off," but was currently dealing with anger problems. (*Id.*) Plaintiff stated he got irritable and angry in crowds, but he could go to a restaurant or "other centers," although he did try to avoid them if possible. (T. 583-584.) Plaintiff reported that he "baby[sat]" his children, watched TV, and was considering going to school. (T. 584.) Notations indicated Plaintiff either "no showed" or cancelled other mental health appointments. (T. 397, 502, 505.)

Dr. Morrier observed that Plaintiff was irritable, but relaxed as the session progressed. (T. 584.) She stated that Plaintiff engaged in the session, was "somewhat motivated," and responded well to intervention. (*Id.*) Dr. Morrier observed that Plaintiff made good eye contact, had a good range of affect, and his speech and activities of daily activities appeared to be within normal limits. (*Id.*) She noted Plaintiff's insight, judgment, and impulse control were intact. (*Id.*)

On December 12, 2012, Plaintiff met with Jeffrey Aronowitz, M.D. for medical maintenance. (T. 582.) Plaintiff reported "moments of depression" and anger/rage reactions. (*Id.*) Plaintiff told Dr. Aronowitz that he had a confrontation with a motorist, but was able to restrain himself from becoming violent. (*Id.*) Dr. Aronowitz noted on examination that Plaintiff was calm, pleasant, and in good control. (*Id.*) He observed that Plaintiff's speech, activities of daily living, and psychomotor activity were within normal limits. (*Id.*) Dr. Aronowitz observed that Plaintiff's mood was euthymic and reactive with full range, normal intensity, and his mood was congruent. (*Id.*) He noted Plaintiff had no formal thought disorders or evidence of psychosis. (*Id.*) Dr. Aronowitz observed that Plaintiff's insight and judgment were intact, he was alert, and he was fully oriented. (*Id.*)

Dr. Morrier completed a medical source statement on April 22, 2013. (T. 585-588.) Dr. Morrier indicated Plaintiff suffered from depression and was seen twice. (T. 585.) In response to the question of whether Plaintiff's ability to understand, remember, and carry out instructions was affected by his impairment, Dr. Morrier wrote "possibly – difficult to determine given only [two] sessions." (T. 586.) However, Dr. Morrier completed the form and opined that Plaintiff had no limitations in understanding and

remembering simple instructions. (*Id.*) She opined Plaintiff had "mild" difficulties in his ability to carry out simple instructions and in his ability to make judgments on simple work-related decision. (*Id.*)[4] Dr. Morrier indicated Plaintiff had "moderate" to "marked" limitations in his ability to understand and remember complex instructions; carry out complex instructions; and make judgments on complex work-related decisions. (*Id.*)

Dr. Morrier also provided an opinion regarding Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in a routine work setting. (T. 587.) Again, Dr. Morrier wrote that Plaintiff "possibly" had difficulties in this area, but an assessment was "difficult given only [two] sessions." (*Id.*) Dr. Morrier opined Plaintiff had "moderate" to "marked" limitations in his ability to: interact appropriately with the public; interact appropriately with supervisor(s); interact appropriately with co-workers; and, respond appropriately to usual work situations and to changes in a routine work setting. (*Id.*)

Dr. Butensky reviewed Plaintiff's record as of August 23, 2012 and opined that Plaintiff did not have a severe mental impairment. (T. 541.) Dr. Butensky completed a psychiatric review technique form and opined therein that Plaintiff had mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. (T. 551.) Dr. Butensky noted that the record indicated Plaintiff lived with his girlfriend and children, he cared for his children, and Plaintiff's activities of daily living form indicated that he had some reduced attention when irritated. (T. 553.) Dr. Butensky reviewed Dr. Caldwell's evaluation, specifically referencing her opinion

---

[4] The form defined "mild" as "there is a slight limitation in this area, but the individual can generally function well;" "moderate" as "there is more than a slight limitations in this area, but the individual is still able to functional satisfactorily;" and "marked" as "there is serious limitations in this area. There is a substantial loss in the ability to effectively function." (T. 586.)

that Plaintiff had some limitations making decisions, relating to others, and dealing with stress. (*Id.*)  Dr. Butensky also referenced treatment notations from Dr. Aronowitz which included an "entirely unremarkable" mental status examination. (*Id.*)[5]  Based on these medical opinions, Dr. Butensky opined Plaintiff's mental impairments were non-severe. (*Id.*)

In assessing the medical evidence in the record, the ALJ afforded "some evidentiary weight" to Dr. Caldwell's opinion. (T. 23.)  The ALJ afforded Dr. Caldwell's opinion that Plaintiff was unable to make appropriate decisions, relate adequately with others, or appropriately deal with stress, "little weight." (*Id.*)  The ALJ reasoned that there was no evidence in the record to support this determination. (*Id.*)

The ALJ afforded Dr. Morrier's medical source statement "little evidentiary weight." (T. 23.)  The ALJ reasoned that Dr. Morrier had only treated Plaintiff on two occasions and her examination findings did not support her opinion regarding the severity of his mental impairments. (*Id.*)

The ALJ afforded "little weight" to Dr. Butensky's opinion. (T. 24.)  The ALJ stated that he did not afford Dr. Butensky's opinion more weight because he did not provide a function-by-function assessment of work-related limitations. (*Id.*)  The ALJ also afforded "little evidentiary weight" to Mr. Thompson's statements. (*Id.*)  The ALJ reasoned his opinion was provided before the continuing disability review and was made during a period when Plaintiff was already determined to be disabled. (*Id.*)

The ALJ's mental RFC determination; that Plaintiff was capable of understanding and remembering simple instructions, and that Plaintiff was capable of performing

---

[5]     Dr. Butensky's notations refer to Dr. Aronowitz notations dated "4/12;" however, there does not appear to be a record from that date.  This appears to be a typo, Dr. Aronowitz treated Plaintiff in April of 2010. (T. 409-410.)

simple tasks, was supported by substantial evidence in the record. Both Dr. Morrier and Dr. Caldwell opined that Plaintiff was capable of performing these work related functions. (T. 533, 586.) Therefore, Plaintiff essentially argues that the ALJ erred in concluding that he was able to make appropriate decisions, attend to a routine, and maintain a schedule, because the ALJ substituted his own opinion and the ALJ failed to rely on Dr. Morrier's opinion. (Dkt. No. 16 [Pl.'s Mem. of Law].)[6] However, substantial medical evidence in the record supported the ALJ's determination that Plaintiff could make decisions, attend to a routine, and maintain a schedule.

In making his mental RFC determination, the ALJ properly relied on the limited mental health treatment notations, as well as Plaintiff's reported activities of daily living. Although Dr. Caldwell opined that Plaintiff was limited in his ability to make appropriate decisions, relate adequately with others and appropriately deal with stress, the ALJ properly concluded that these limitations were not supported by objective medical observations. (T. 21.) The ALJ relied on the objective mental status examinations of Dr. Caldwell, Dr. Aronowitz, and Dr. Morrier, which indicated Plaintiff was calm, pleasant, cooperative, in control, related well, maintained good eye contact, and otherwise normal findings. (T. 21); *Stottlar v. Colvin*, No. 5:13-CV-00047, 2014 WL 3956628, at *16 (N.D.N.Y. Aug. 13, 2014) (ALJ properly afforded opinion that plaintiff

---

[6]     Plaintiff argues elsewhere that the ALJ committed error because he impermissible picked certain aspects of Drs. Caldwell and Morrier's opinions to reach the conclusion he wanted. (Dkt. No. 16 at 24 [Pl.'s Mem. of Law].) However, as stated herein, the ALJ properly assessed the opinion and his mental RFC was supported by substantial evidence. There is no indication in the record that the ALJ impermissibly "cherry picked" the record. The ALJ provided a complete synopsis of the medical evidence in the record and a thorough analysis of the evidence. In addition, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).

may have difficulty understanding instructions and may have difficulty interacting appropriately with others little weight where mental status examinations revealed plaintiff's attention and concentration were intact, and plaintiff was cooperative, her manner of relating, social skills, and overall presentation were adequate).  Further, the ALJ properly relied on Plaintiff's testimony which did not support the alleged social limitations.  (T. 21.)  Plaintiff testified that he lived with his girlfriend and children, Plaintiff was interested in going to school, and he worked part-time.  (T. 21-22.)

Therefore, Plaintiff's argument that the ALJ substituted his own lay opinion for medical opinion fails.  In formulating his mental RFC determination, the ALJ properly relied on medical evidence in the record, specifically mental status examinations of Drs. Caldwell, Aronowitz, and Morrier as well as the opinion of Dr. Butensky.  The ALJ also relied on Plaintiff's testimony which did not support his allegations.   Further, Dr. Butensky reviewed Dr. Caldwell's opinion and despite the limitations Dr. Caldwell imposed, Dr. Butensky determined Plaintiff's mental health impairments were non-severe.

Plaintiff further argues the ALJ failed to follow the treating physician rule because he "failed to prove that [Dr. Morrier's] opinion was not well supported, and since he had offered no substantial evidence inconsistent therewith, Dr. Morrier's opinion must be given controlling weight."  (Dkt. No. 16 at 22 [Pl.'s Mem. of Law].)[7]

---

[7]        Of note, although the ALJ thoroughly discussed Dr. Morrier's opinion and identified that she provided mental health services, the ALJ does not refer to Dr. Morrier as a treating physician.  (T. 23.)  The Second Circuit has held that that treating sources who see a patient only once or twice do not have a chance to develop an ongoing relationship with the patient and thus are generally not considered treating physicians.  *Petrie v. Astrue,* 412 F. App'x 401, 405 (2d Cir.2011); *Schisler v. Bowen,* 851 F.2d 43, 46 (2d Cir.1988) (defining a "treating physician" as a physician "who has or had an ongoing treatment and physician-patient relationship with the individual"); *Lasitter v. Astrue*, No. 2:12-CV-112, 2013 WL 364513, at *6 (D. Vt. Jan. 30, 2013), *appeal dismissed* (Jan. 10, 2014) (doctor who treated plaintiff only two times did not have an ongoing relationship with plaintiff and was therefore not a treating physician for the purposes of the treating physician rule).  Therefore, Dr. Morrier could be classified

The ALJ properly assessed Dr. Morrier's opinion, because he adhered to the Regulations in his assessment of Dr. Morrier's opinion. The ALJ concluded that Dr. Morrier's opinion was entitled to "little evidentiary weight" because she only treated Plaintiff twice and her objective examination findings did not support her opinions. (T. 23.) The ALJ properly relied on the frequency of Dr. Morrier's treatment sessions under 20 C.F.R. § 404.1527(c)(2)(i). The ALJ also properly concluded that Dr. Morrier's opinion was not supported by her own objective treatment observations under 20 C.F.R. § 404.1527(c)(2). Clearly, "[c]onsistency" is a factor in deciding the weight accorded to a medical opinion, and it is proper to give less weight to a medical opinion that is "internally inconsistent." *Michels v. Astrue,* 297 F. App'x 74, 75 (2d Cir.2008); *see* 20 C.F.R. § 404.1527(c)(4). Further, Dr. Morrier clearly indicated in her medical source statement that Plaintiff's limitations were "difficult to determine" do to her very short treatment of Plaintiff and the limitations were "possible," but not conclusive. (T. 586.) Therefore, the ALJ did not commit legal error because he properly adhered to the Regulations in assessing Dr. Morrier's opinion. The ALJ's determination was also appropriate given Dr. Morrier's own apparent hesitation in the limitations she imposed.

### ii.) Physical RFC

The ALJ determined that Plaintiff had the physical RFC to perform light work, except Plaintiff could: occasionally climb stairs or ramps; rarely kneel or crawl; and never climb ladders, ropes, or scaffolds. (T. 18.) The ALJ based his physical RFC determination on the medical opinions of consultative examiner, Hongbiao Liu, M.D.;

---

as a non-treating physician because she only treated Plaintiff on two occasions and any error the ALJ may have made in failing to follow the treating physician rule would be harmless. However, assuming arguendo, that the ALJ considered Dr. Morrier a treating physician, the ALJ properly adhered to the Regulations in assessing her opinion and substantial evidence still supported the ALJ's RFC determination.

non-examining State agency medical consultant, J. Dale, M.D;, and, Plaintiff' physical therapist, Julianne Papaleo.  (T.22, 24.)

Plaintiff argues the ALJ erred in his physical RFC determination because he (1) substituted his own lay opinion for medical evidence and (2) he afforded more weight to the non-examining State agency consultant, Dr. Dale, than to the one time examining consultative examiner, Dr. Liu.  (Dkt. No. 16 at 17, 24 [Pl.'s Mem. of Law].)

Dr. Liu examined Plaintiff on June 29, 2012.  (T. 558-561.)  Based on his examination, Dr. Liu opined that Plaintiff had "moderate limitations for his routine activities.  [Plaintiff] should try to avoid lifting, carrying, bending, or any overhead reaching."  (T. 560-561.)  The ALJ afforded Dr. Liu's medical source opinion "partial evidentiary weight."  (T. 22.)  The ALJ rejected Dr. Liu's opinion that Plaintiff had limitations in bending because there was no objective medical evidence to support Plaintiff's complaints of back pain and he did not seek medical treatment for a back condition.  (*Id.*)  The ALJ also rejected Dr. Liu's opinion that Plaintiff had limitations in his ability to reach, reasoning that Plaintiff showed full range of motion in his shoulders during the consultative examination.  (*Id.*)  The ALJ further relied on Ms. Papaleo's opinion that Plaintiff had no restrictions for lifting, weight-bearing, or range of motion.  (T. 514, 518.)

The ALJ provided Dr. Dale's opinion "great weight."  (T. 22.)  Dr. Dale reviewed Plaintiff' medical file through September 2012, and opined that Plaintiff could perform the exertional requirements of light work, as well as sit for a total of six hours in an eight hour workday.  (T. 563.)  Dr. Dale stated his determination was supported by Dr. Liu's medical examination, and notations from Plaintiff's providers at the VA from September

2011, October of 2011, and March 2012. (T. 563-564.) Dr. Dale also relied on Ms. Papaleo's notations from November 2011 which did not impose weight bearing limitations. (T. 564.) Dr. Dale opined that Plaintiff had no postural limitations, manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations. (T. 564-565.)

Plaintiff argues the ALJ erred in rejecting Dr. Liu's opinion that Plaintiff was limited in his ability to reach and bend. (Dkt. No. 16 at 17 [Pl.'s Mem. of Law].) Plaintiff specifically argues that the ALJ failed to cite to another physician's opinion that "contradict[ed]" Dr. Liu's opinion and therefore impermissibly relied on his own lay interpretation of the record. (*Id.* at 17.) However, the ALJ clearly relied on Dr. Dale's opinion to support his physical RFC determination (T. 22). Dr. Dale, a physician, reviewed Dr. Liu's examination and medical source statement and opined that Plaintiff did not have limitations in his ability to reach or bend. (T. 563-564.) Therefore, contrary to Plaintiff's contentions, the ALJ did rely on another expert opinion.

Plaintiff further argues the ALJ erred in affording more weight to Dr. Dale, who did not examine Plaintiff, than to Dr. Liu, who examined Plaintiff one time. (Dkt. No. 16 at 24 [Pl.'s Mem. of Law].) Under the Social Security regulations, the opinion of a physician who personally treated a claimant is generally given more weight than the opinion of a physician who did not treat the Plaintiff. 20 C.F.R. § 404.1527(c)(2). However, affording more weight to a non-examining source is not *per se* grounds for remand. Further, Plaintiff argues the ALJ erred because he did not explain his reasoning for affording Dr. Dale's opinion more weight than Dr. Liu's opinion. (Dkt. No. 16 at 24 [Pl's Mem. of Law].) However, the ALJ's decision clearly provided the ALJ's

analysis regarding the weight afforded to the medical opinion evidence in the record. (T. 22.)

In making his physical RFC determination the ALJ properly adhered to the Regulations in weighing the medical opinion evidence in the record. The ALJ's physical RFC determination was supported by substantial evidence, including Dr. Dale's opinion, Dr. Liu's opinion and Ms. Papaleo's opinion.

### C. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. § 404.1529; SSR 96–7p. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); SSR 96–7p. Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and

limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); SSR 96-7p.

Here, the ALJ determined that Plaintiff's medically determinable impairments could have reasonably been expected to produce the alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of those symptoms was not entirely credible. (T. 19.)

Plaintiff argues the ALJ erred in his credibility determination. Plaintiff relies on 20 C.F.R. § 404.1529(a), which Plaintiff quotes in his brief as: "a medical impairment which would reasonably be expected to produce the pain or other symptom alleged and which, when considered with all other evidence . . . would lead to a conclusion that you are disabled." (Dkt. No. 16 at 18 [Pl.'s Mem. of Law].) Plaintiff contends the Regulation means that "so long as the medical evidence could support Plaintiff's asserted symptoms, the affirmed symptoms are credible." (*Id.* at 18-19.) However, the full quote reads: "a medical impairment(s) which could reasonably be expected to produce the

pain or other symptoms alleged and which, when considered with all of the other evidence *(including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings)*, would lead to a conclusion that you are disabled." 20 C.F.R. § 404.1529(a). "[A]ll of the other evidence" refers to second step of the credibility analysis in which the ALJ looks to the factors outlined in 20 C.F.R. § 404.1529(c)(3)(i)-(vii). Here, the ALJ properly conducted a credibility analysis in accordance with the Regulations and substantial evidence supported the ALJ's determination.

In making his credibility determination the ALJ first reviewed the objective medical evidence in the record, or lack thereof. (T. 19.) The ALJ discussed Plaintiff's testimony regarding his symptoms. (*Id.*) The ALJ discussed Plaintiff's activities of daily living and minimal medical treatment that he received. (T.19-21.) For example, the ALJ noted that Plaintiff did not seek mental health treatment until the continuing disability review was commenced in 2012 and he was not taking medication for mental impairments. (T. 20-21.) The ALJ noted that Plaintiff was able to perform activities of daily living which were not consistent with his allegations that his mental impairments were totally disabling. (T. 21.) As a further example, the ALJ noted x-rays showed moderate degenerative changes and post-surgical changes in Plaintiff's knee; however, physical examinations showed Plaintiff had full range of motions in his knee, his gait was normal, he had full strength, and he was prescribed ibuprofen and physical therapy. (T. 20.)

Plaintiff argues that evidence in the record supports his allegations that he is disabled due to his impairments (Dkt. No. 16 at 19 [Pl.'s Mem. of Law]); however, under

the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review). Here, although Plaintiff provides evidence he contends supports his credibility, he ultimately fails to prove that no reasonable factfinder could have reached the ALJ's conclusion.

Therefore, for the reasons stated herein, and further outlined in Defendant's brief, the ALJ did not err in his credibility determination and it is recommended that his determination be upheld.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:        June 21, 2016

William B. Mitchell Carter
U.S. Magistrate Judge